**DENNIS STEINMAN,** OSB No. 954250
dsteinman@kelrun.com
Kell, Alterman & Runstein, LLP
520 S.W. Yamhill, Suite 600
Portland, OR 97204
Telephone: 503/222-3531
Fax: 503/227-2980
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **CINDY LELAND** and **FAIR HOUSING COUNCIL OF OREGON,** | **3:12-cv-00911-SI** |
| **Plaintiffs,** | |
| v. | **CONSENT DECREE** |
| **PORTLAND STATE UNIVERSITY,** a public University in the Oregon University system, | |
| **Defendant.** | |

## I.   **INTRODUCTION**

1.      This action was filed by Plaintiffs on April 20, 2012, asserting claims under Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3631 (the Fair Housing Act); ORS 659A.142-145; Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq.* (ADA); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* (Section 504); and other common law claims. Defendant removed the present action to federal court on May 22, 2012, under 42 U.S.C. §§ 1441 and 1446.  Plaintiffs generally allege that Defendant violated these statutes by discriminating against Plaintiffs on the basis of disability.  In particular, Plaintiffs allege that Defendant violated these statutes as they related to plaintiff Leland's use of a service dog in Defendant's housing and on campus, and relating to other matters concerning the provision of

Page 1 -- Consent Decree

accommodation/modifications for plaintiff Leland as well as other students with assistance animals, and by maintaining policies that do not comply with the statutes.

2.     Defendant denies all material allegations of the Complaint and denies any wrongdoing or liability to Plaintiffs or any other person.

3.     Defendant maintains that there was no discrimination and that its policies comply with the statutes. Subject to any future binding court interpretations to the contrary, Defendant acknowledges that its operation of student housing is subject to the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Fair Housing Act, and ORS 659A.145. Plaintiffs acknowledge that nothing in the Fair Housing Act or ORS 659A.145 precludes Defendant from making nondiscriminatory distinctions in Defendant's housing consistent with Defendant's legitimate educational purposes provided that the neutral distinctions do not have a discriminatory effect contrary to law.

4.     The United States Department of Justice ("DOJ") has concurrently been engaged in an investigation of Defendant pursuant to Title II of the ADA, based, in part, on allegations also raised in the Complaint. The United States is not, however, a party to this action. Defendant has at all times cooperated fully with the DOJ's investigation. To resolve the issues concerning the ADA in the DOJ's investigation, Defendant agrees to enter into a settlement agreement with DOJ within a reasonable time following its receipt of the proposed settlement agreement from DOJ. The settlement agreement, like this Consent Decree, will address Defendant's obligations to ensure compliance with the ADA with respect to individuals with disabilities who use or seek to use service animals, including development of comprehensive policies regarding service animals and reasonable modification requests under the ADA; development of a training program for faculty and staff regarding reasonable accommodations/modifications in student housing and publicly accessible areas of campus; compliance with 28 C.F.R. Section 35.150 (Existing Facilities), including providing a copy of any previous reports completed by PSU for meeting the requirements of such section; revision of the complaint resolution procedures which Defendant provides to students who have been denied a reasonable modification; and reporting and

Page 2 -- Consent Decree

monitoring requirements during the term of the settlement agreement. Upon execution of this settlement agreement, the agreement will be filed as an exhibit to this Consent Decree.

5.      The parties agree that, to avoid costly and protracted litigation, the claims against Defendant should be resolved without further proceedings or a trial.

6.      The parties acknowledge that Defendant has, and at all relevant times has had, policies in place regarding the reasonable accommodation/modification for persons with disabilities, prohibiting discrimination based on disability, and concerning service animals and support animals. As a result of an ADA complaint filed with the Office of Civil Rights of the United States Department of Education ("OCR"), those policies were revised through a Voluntary Resolution Agreement in consultation with OCR and were approved by OCR. Defendant is further revising those policies as part of this Consent Decree as provided in Appendix D. In addition, Defendant has, and at all relevant times has had, a Disability Resource Center ("DRC") to collaborate with and empower students who have disabilities in order to coordinate support services and programs that enable access to an education and university life. To accomplish this goal, the DRC provides pre-admission and disability counseling, educational training, advocacy and a variety of accommodations/modifications for equal access to the educational process and campus life.

7.      This Consent Decree resolves Plaintiffs' claims in their Complaint against Defendant named herein.

8.      It is hereby ORDERED, ADJUDGED and DECREED:

## II.    COMPLIANCE AND INJUNCTION

1.      Defendant will comply with its obligations related to assistance and service animals under the laws set forth in Section I.1, as well as with all other applicable obligations of those laws. Defendant, its agents, employees, and all other persons in active concert or participation with it, are hereby enjoined and Defendant agrees they are precluded from:

    a.   Discriminating against persons in the terms, conditions, or privileges of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2);

    b.   Refusing to make reasonable accommodations in rules, policies, practices, or services at University Housing, when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B);

    c.   Making, printing or publishing, or causing to be made, printed or published, any notice or statement, with respect to a dwelling, that indicates a preference, limitation, or discrimination based on disability, in violation of 42 U.S.C. § 3604(c); and

    d.   Excluding persons from participation in Defendant's services on account of their disability, including refusing to modify its policies, practices, or procedures to permit persons to bring service animals into Defendant's buildings and classrooms, in violation of 42 U.S.C. § 12132.

## III.    PAYMENTS TO PLAINTIFFS AND OTHER AGGRIEVED PERSONS[1]

---

[1] Under the Fair Housing Act, 42 U.S.C. §3601 *et seq.*, an "aggrieved person" is any person who

    (1)  Claims to have been injured by a discriminatory housing practice; or

    (2)  Believes that such person will be injured by a discriminatory housing practice that is about to occur.

42 U.S.C. § 3602(i).

Defendant denies that any person referred to as "aggrieved" under this Consent Decree has been injured by any discriminatory housing practice at Portland State University.

Page 4 -- Consent Decree

1.      Defendant shall pay $142,500.00 to Plaintiffs Leland and the Fair Housing Council of Oregon ("FHCO"), in full satisfaction of their claims for damages and attorney fees against Defendant.  Defendant shall send a check for this amount made payable to the Kell, Alterman & Runstein, L.L.P. Lawyer Trust Account to counsel for Plaintiffs within thirty (30) days after the entry of this Consent Decree.  Upon receipt of payment, Plaintiffs Leland and FHCO will execute and deliver Releases to Defendant in the form of Appendices A-1 and A-2.

2.      Within thirty (30) days of the entry of this Consent Decree, Defendant shall provide Plaintiff FHCO $19,000.00, which FHCO will deposit in an interest-bearing account ("Fund For Students With Disabilities and Service or Assistance Animals" or "Fund") to be used for compensation for students or former students identified by FHCO as individuals who FHCO determines may have been treated differently because of their disabilities and who are identified according to this Consent Decree.  Plaintiff FHCO shall be entitled to be paid a reasonable administration fee from the Fund.  Plaintiff FHCO shall submit to Defendant a list of those persons identified as recipients of funds from the Fund, and the amounts it will distribute to them. Defendant agrees that it will not object to or challenge any person identified.  Within thirty (30) days of providing Defendant with the list, Plaintiff FHCO shall cause the Fund to issue checks in the name of the recipients.  Prior to receiving any payment from the Fund, the recipient shall execute a Release in the form attached as Appendix C.  Any interest accruing in the Fund shall become part of the Fund and be utilized as set forth herein.  In the event that less than the total amount in the Fund, including accrued interest, is distributed to students or former students as identified according to this Consent Decree, the remainder shall be distributed to a qualified organization(s) mutually agreed upon by Plaintiff FHCO and Defendant for purposes of conducting fair housing and disability discrimination enforcement and educational activities in the Portland, Oregon metropolitan area.

3.      To notify potential claimants, within thirty (30) days of entry of this Consent Decree, Defendant shall cause an email in the form of Appendix B to be sent to all students who resided or applied to reside in Defendant's housing between and including January 1, 2009,

Page 5 -- Consent Decree

through the entry of this Consent Decree.  Defendant shall also email such notice to all students who are or were registered with the Disability Rights Center at any time between and including January 1, 2009, through the entry of this Consent Decree.  Within forty-five (45) days of entry of this Order, the Defendant shall provide to counsel for FHCO proof that the Notice has been sent. For purposes of this section, email notification shall mean emails to (i) students' PSU email address; and (ii) students' personal non-PSU email address.  If no personal non-PSU email address exists in Defendant's records, then the notice shall be mailed by first-class mail to the students' last known home address on record.

IV.   **DISABILITY DISCRIMINATION, REASONABLE ACCOMMODATION/MODIFICATION AND SERVICE ANIMAL / ASSISTANCE ANIMAL POLICIES**

1.      Defendant has agreed to revise disability related policies, specifically its Reasonable Accommodation/Access Policy and Assistance Animal Policy, which revisions are reflected in Appendix D (the "Revised Policies"), and which are agreed upon by the parties and compliant with the Fair Housing Act, ADA, Section 504 of the Rehabilitation Act, and ORS 659A.145.

2.      Defendant agrees that it will not during the term of this Consent Decree modify its Reasonable Accommodation/modification/Access Policy or its Assistance Animal Policy, except as necessary to comply with changes in prevailing and binding law, in which case Defendant will notify counsel for FHCO of its need to make such a modification or modifications.

3.      Within fourteen (14) days following entry of this Consent Decree, Defendant shall notify by email all students, staff and faculty of the Revised Policies, and that the Revised Policies incorporate language relating to state and federal disability laws.  The DRC and the Office of Residential Life and Housing shall maintain all disability-related policies in a conspicuous, accessible location for students in physical binders within their offices, and further may have all disability-related policies available on DRC's and Office of Residential Life and Housing's sections of Defendant's web site.

Page 6 -- Consent Decree

4.      No later than fourteen (14) days after the entry of this Consent Decree, Defendant shall provide each of its Department Chairs, Academic Deans and Associate or Assistant Deans with its Reasonable Accommodation/modification/Access and Assistance Animal policies, and all employees working at Defendant's Office of Equity and Compliance, Office of Housing and Residence Life and DRC as well as the Dean of Students with a copy of those disability-related policies as well as a copy of FHE0-2013-01, issued April 25, 2013, attached hereto as Appendix E. All persons receiving these copies shall sign an acknowledgment that he or she has received, read and understands the policies received, and declaring that he or she will perform his or her duties in accordance with the ADA, Section 504 of the Rehabilitation Act, ORS 659A.142 and ORS 659A.145 (in the case of the Department Chairs, Academic Deans, and Associate or Assistant Deans) and the ADA, Fair Housing Act 42 U.S.C. §§ 3601-3631, Section 504 of the Rehabilitation Act, ORS 659A.142 and ORS 659A.145 (in the case of the employees working at Defendant's Office of Equity and Compliance, Office of Housing and Residence Life, and the DRC) to the best of his or her abilities.  This acknowledgment may be accomplished electronically.  Defendant shall file a declaration with the Court within sixty (60) days following entry of this Consent Decree indicating it has complied with this paragraph and shall maintain the acknowledgments through the term of this Consent Decree.

## V.    **MANDATORY EDUCATION AND TRAINING**

1.      Within ninety (90) days of the entry of this Consent Decree, and once each calendar year thereafter for the duration of this Consent Decree, all members of Defendant's Office of Housing and Residence Life and DRC shall attend, at Defendant's expense, an education and training program regarding the disability discrimination provisions of the Fair Housing Act.  The education and training should specifically address the differences between the ADA and the Fair Housing Act with regard to assistance animals.  Attending training put on by the DOJ, or another outside entity approved by the FHCO, will suffice to comply with this section.  This training shall supplement, and not supplant, any training Defendant is already conducting pursuant to any

Voluntary Resolution Agreement with the United States Department of Education, but such training may be part of the same training.

2.    Defendant will continue to require faculty and staff to participate in training regarding prohibited discrimination and harassment, as well as reasonable accommodation/modification obligations, through Defendant's online training module. Changes to the module shall be consistent with this Consent Decree and prevailing and binding law.

3.    Defendant shall obtain from the educator or trainer or educating or training entity documentation of attendance of the training in Section V.1. The documentation shall include the name of the course, the date the course was taken, the names and titles of the attendees, the subject matters covered in the course, and the length of the course and/or time within which the course was completed. Within thirty (30) days of the first training that occurs as referenced in Section V.1, Defendant shall file with the Court a declaration stating that the training has occurred, identify in the declaration who conducted the training and when the training occurred, and Defendant shall keep the supporting documentation through the term of the Consent Decree. For the subsequent training covered in Section V.1, and for all trainings covered by Section V.2, Defendant shall file with the Court a declaration stating that the training has occurred and shall maintain the documentation through the term of the Consent Decree.

## VI.    SELF-AUDIT

1.    Defendant shall perform and complete a comprehensive self-audit of its Fair Housing Act compliance within six (6) months of entry of this Consent Decree and shall remedy any violations identified in its Fair Housing Act self-audit within one year of entry of this Consent Decree. Defendant shall file with the Court within thirty (30) days of completion of Defendant's audit a declaration stating that the audit has occurred and shall maintain the audit through the term of the Consent Decree. PSU will provide a copy of the audit report to counsel for FHCO at the time it submits its declaration.

/ / /

## VII.    MISCELLANEOUS

1.    The parties stipulate that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3601 *et seq.* and that this Consent Decree is effective immediately upon its entry by the Court.

The Court shall retain jurisdiction over the action and over the Defendant for three (3) years from the date of entry of the Consent Decree to enforce its terms, after which time the case shall be dismissed with prejudice.  Either Plaintiff may, however, move the Court to extend the duration of the Consent Decree in the interests of justice.  The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution.  However, in the event of a failure by Defendants to perform in a timely manner any act required by this Consent Decree or otherwise to act in conformance with any provision thereof, Plaintiffs may move the Court to impose any remedy authorized by law or equity, including, but not limited to, an Order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees if applicable, which may have been occasioned by the violation or failure to perform.

IT IS SO ORDERED this _____ *13th* _____ day of _____ February _____, 2014.

_____

UNITED STATES DISTRICT COURT JUDGE

The undersigned apply for and consent to the entry of this Order as of this 10th day of February,

2014.

KELL, ALTERMAN & RUNSTEIN, LLP

s/ Dennis Steinman
**DENNIS STEINMAN**, OSB NO. 954250
503/222-3531
**Attorneys for Plaintiffs**


MILLER NASH LLP


s/Michael Porter
**MICHAEL PORTER**, OSB NO. 003560
503/205-2330
**Attorneys for Portland State University**

## APPENDIX A-1

## RELEASE OF ALL CLAIMS

In consideration of and contingent upon the payment of the sum of One Hundred and Forty-Two Thousand Five Hundred Dollars ($142,500.00), pursuant to the Consent Order entered in *Cindy Leland and Fair Housing Council of Oregon v. Portland State University,* case number 12-CV-00911-SI, United States District Court, District of Oregon, the undersigned hereby releases and forever discharges the Defendant and any entity or person that acts on Defendant's behalf, including, without limitation, the State Board of Higher Education and the Oregon University System, from any and all liability for the claims brought or that could have been brought in this action against PSU as of the date of the entry of the Consent Decree. The undersigned fully acknowledges that the payment by Defendant of the monies recited herein is adequate consideration for this Release. The undersigned further acknowledges the undersigned has read and understands this Release and has executed it voluntarily and with full knowledge of its legal consequences.

_____
CINDY LELAND
Dated: _____

## APPENDIX A-2

## RELEASE OF ALL CLAIMS

In consideration of and contingent upon the payment of the sum of One Hundred and Forty-Two Thousand Five Hundred Dollars ($142,500.00), pursuant to the Consent Order entered in *Cindy Leland and Fair Housing Council of Oregon v. Portland State University,* case number 12-CV-00911-SI, United States District Court, District of Oregon, the undersigned hereby releases and forever discharges the Defendant and any entity or person that acts on Defendant's behalf, including, without limitation, the State Board of Higher Education and the Oregon University System, from any and all liability for all known claims brought or that could have been brought in this action against PSU as of the date of the entry of the Consent Decree, with the sole exception of an administrative complaint PSU is aware of. The undersigned fully acknowledges that the payment by Defendant of the monies recited herein is adequate consideration for this Release. If the undersigned is a corporate entity, whether for profit or not, the designated signor of this Release fully acknowledges and agrees this Release of the Defendant shall be binding on the entity for which the undersigned is executing this Release. The undersigned further acknowledges the undersigned has read and understands this Release and has executed it voluntarily and with full knowledge of its legal consequences.

FAIR HOUSING COUNCIL OF OREGON

By:_____
Its:_____
Dated:_____

## APPENDIX B

## NOTICE TO STUDENTS WITH DISABILITIES AND ASSISTANCE ANIMALS

On _____, 2014, the United States District Court for the District of Oregon entered a Consent Decree resolving a lawsuit brought by Cindy Leland and the Fair Housing Council of Oregon against Portland State University. The lawsuit alleged that the Portland State University violated state and federal disability laws by, in part, failing to accommodate disabled persons with assistance animals in student housing and/or service animals in classrooms. Portland State University denies the allegations and did not admit any wrongdoing or liability under the disability laws.

Nonetheless, pursuant to the Consent Decree, Portland State University agreed to establish a Fund for Students with Disabilities. The Fund is to be used to compensate qualified students with disabilities who believe they suffered an injury as a result of alleged disability discrimination related to an assistance animal, which includes either a service animal or a support animal. You may be qualified to recover from the Fund if you were/are a person with a disability in need of an assistance animal, whether it be a service animal or a support animal, and you believe you were discriminated against between and including January 1, 2009 through the date of entry of the Consent Decree, for reasons related to your need for an assistance animal.

For purposes of this settlement, an assistance animal is an animal that does work or performs tasks for the benefit of a person with a disability, or provides emotional support or other assistance that alleviates one or more symptoms or effects of a person's disability. The most common assistance animals are dogs, although other animals may qualify as assistance animals. Assistance animals are not considered pets under the law.

If you believe you fall into one of these categories, or if you have information about someone else you believe falls into one of these categories, **PLEASE CONTACT THE FAIR HOUSING COUNCIL OF OREGON  NO LATER THAN [_____] VIA EMAIL AT INFORMATION@FHCO.ORG (WITH THE WORDS "Fund For Students With Disabilities" IN THE SUBJECT LINE OF THE E-MAIL) OR VIA MAIL AT:**

      Fair Housing Council of Oregon
      Attn: Fund For Students With Disabilities
      506 SW 6th Ave, Suite 1111
      Portland, OR 97204

Your e-mail or letter **must** include your name, address, and, if possible, at least TWO telephone numbers where you may be reached.

## APPENDIX C

## <u>RELEASE OF CLAIMS</u>

In consideration for the parties' agreement to the terms of the Consent Decree entered in

*Cindy Leland and Fair Housing Council of Oregon v. Portland State University*, No.

3:12-cv-00911-SI in the United States District Court for the District of Oregon, and Portland State

University's payment to me through the Fair Housing Council of Oregon from the Consent

Decree's Fund for Students With Disabilities and Service or Assistance Animals, and pursuant to

the Consent Decree, I hereby agree, effective upon receipt of payment, to remise, release, and

forever discharge any and all claims of any kind, nature or description whatsoever, related to

disability discrimination claims up to and including the date of execution of this Release, that I

may have against Portland State University, and any person or entity acting on its behalf,

including, without limitation, the State Board of Higher Education and the Oregon University

System.  I further release any and all claims that I may have against the Fair Housing Council of

Oregon relating to the administration of the Fund.

I acknowledge and understand that by signing this Release and accepting this payment, I

am waiving any right to pursue my own legal action based on alleged disability discrimination by

Portland State University.  I also acknowledge that I have been informed that I may review the

terms of this Release with an attorney of my choosing, and to the extent that I have not obtained

legal advice, I voluntarily and knowingly waive my right to do so.

This Release constitutes the entire agreement between Portland State University and me concerning its subject matter.

_____
Name
_____
Date

# APPENDIX D

## *Revised Policies*

# REASONABLE ACCOMMODATION/ACCESS POLICY

## I.    Policy Statement

Portland State University (PSU) is committed to complying with the law requiring equal employment and education opportunities to all qualified individuals.

## II.    Reason for Policy/Purpose

The purpose of this policy is to ensure that:

- PSU students with disabilities are provided with reasonable accommodations that give them the opportunity for equal access to educational programs, activities, services, and university life. Prospective students are provided with reasonable accommodations to assist them in the application process.

- PSU employees with disabilities are provided with reasonable accommodations to allow them to perform the essential functions of their jobs.

- Applicants for employment at PSU with disabilities are provided with reasonable accommodations to assist them in the application and hiring process.

- Members of the public who require accommodations are provided with reasonable accommodations to access PSU facilities or to participate in PSU-sponsored events or activities.

## III.    Applicability

This policy applies to all students (including prospective, undergraduate and graduate), employees (faculty and staff), applicants for employment or admission, and members of the public.

## IV.    Definitions

1. **Disability.** A disability is a physical or mental impairment that substantially limits one or more major life activities as defined by the Americans with Disabilities Act at 42 U.S.C. Section 12102, and as defined by the Federal Fair Housing Act at 42 U.S.C. Section 3602 for accommodations made in University Housing . Examples of major life activities include: self-care, performing manual tasks, walking, talking, hearing, seeing, breathing, working, and learning.

2. **Interactive Process.** The interactive process is an informational exchange, typically between the following individuals, in order to identify potential reasonable accommodations:

- The student/applicant, faculty member, and Disability Resource Center (DRC);

- The employee/applicant, supervisor, and Human Resources (HR); or

- The member of the public, DRC, and appropriate PSU faculty or staff.

When a reasonable accommodation is not readily identifiable, the interactive process identifies the nature of the limitations resulting from the disability and how those limitations are or are not relevant to potential reasonable accommodations.

3. **Reasonable Accommodation.** A reasonable accommodation is a modification or adjustment to a policy, procedure, or practice, or auxiliary aid or service, provided to a qualified person with a disability to enable the person to a) participate in educational programs and activities; b) perform the essential functions of a job; c) apply for admissions or apply and interview for employment; d) access PSU facilities and events; or e) have equal use and enjoyment of University Housing.

For example, depending on the circumstances, a reasonable accommodation could include making an existing facility readily accessible to and usable by persons with disabilities; job restructuring for an employee; allowing an employee a part-time or modified work schedule or transfer to a vacant position; acquisition or modification of equipment or devices; appropriate adjustment or modification of examinations, training materials, or policies; modification to academic requirements that are not essential or directly related to licensing requirements; the provision of auxiliary aids such as qualified readers, interpreters or note takers; allowing a support animal to reside in University Housing, and other similar accommodations for persons with disabilities.

# V.    Policy / Procedures

## 1.    Policy

PSU is committed to reasonably accommodating people with disabilities in compliance with applicable state and federal laws and regulations. Requests for accommodations will be evaluated on a case-by-case basis in accordance with applicable laws and regulations.

## 2.    Requesting an Accommodation

### 2.1    For Current & Prospective Students.
Unless otherwise stated below, any current or prospective student who has a disability and requires a reasonable accommodation is required to register with the DRC. A student who approaches a professor or instructor for an accommodation should be referred to the Accommodations Coordinator in the DRC. Prospective students requiring reasonable accommodations to complete the application for admissions should also contact the DRC.

To enable PSU to assess whether a student might be eligible for an accommodation and which accommodations may be reasonable, the DRC may require a student to

provide documentation of his or her impairment and information about limitations resulting from the impairment, except for service animals as noted below.

**2.1(a) Request for University Housing Accommodations.** Except in the case of students using service animals, students who will need an accommodation for University Housing are required to register with the DRC.

**2.1(b) Assistance Animals (Service and Support Animals).** A student with a disability who is accompanied by a service animal (in University Housing or elsewhere on campus) but does not want any disability-related accommodations or services is encouraged, but not required, to register with the DRC. Students who intend to live with a service animal in University Housing should notify the Office of Housing and Residence Life as soon as practically possible to aid PSU in housing logistics and planning (i.e. roommate matching). (See Section 4.03 of PSU's Housing Handbook and PSU's Assistance Animal Policy.)

Students who seek a support animal (i.e. emotional support) as an accommodation for a disability (academic or housing) must register with the DRC and request the support animal accommodation as soon as practically possible. (See Section 4.04 of PSU's Housing Handbook).

**2.2    For Employees (Faculty & Staff).** Any employee who has a disability and requires one or more reasonable accommodations to perform the essential functions of his or her job should request such accommodations from HR. An employee who approaches a Supervisor for an accommodation should be referred to HR. To enable PSU to assess whether an employee might be entitled to an accommodation and whether certain accommodations are reasonable, an employee will typically be required to provide documentation of his or her impairment and information about limitations resulting from the impairment.

**2.3    For Candidates for Employment.** If a candidate for employment requires reasonable accommodations to participate in the application, interview, or hiring process, the candidate should make a request for reasonable accommodations to the hiring department, or the secretary or chair of the search committee. The candidate may also contact HR for assistance. The hiring department or secretary or chair of the search committee must consult with HR regarding requested accommodations.

**2.4    For Members of the Public.** Members of the public who require reasonable accommodations to participate in a PSU sponsored program, service, or activity should contact the Conference & Events Office or the DRC to make the request directly. The Conference & Events Office must consult with the DRC with regard to requested accommodations. To determine what reasonable accommodation will be provided, each request will be evaluated on a case-by-case basis, depending on such factors as the nature of the disability and the type of event or activity.

    **2.4a  Publicizing PSU-Sponsored Events.**  All PSU offices, student organizations, programs, or departments, when publicizing PSU-sponsored public events, are responsible for including the Conference & Events Office and the DRC's contact information for people who wish to request reasonable accommodations.

    Appropriate wording to include in PR materials is as follows: "Requests for reasonable accommodations may be made to Conference & Events Office, (503) 725-CONF, e-mail: conferences@pdx.edu or the Disability Resource Center, (503) 725-4150, e-mail: drc@pdx.edu. In order to ensure that reasonable accommodations can be provided in time for this event, please make your requests as soon as possible."

**3.  Responding to Accommodation Requests**

The DRC will respond to a student request for accommodation within 14 days of having received the request and any supporting documentation (if documentation was requested). If additional time beyond 14 days is needed for the interactive process, the DRC will contact the student to notify him or her of the status of the request.  Accommodation requests will not be unreasonably delayed.  The DRC's determination regarding any such accommodation is binding on all PSU faculty, staff, and employees.

If the DRC denies the request for accommodation, such denial will be provided in writing to the student or employee, along with notice as to how a complaint may be made.

**4.  Resolving Disagreements/Filing a Complaint.**  If a current or prospective student, employee, candidate for employment, or member of the public disagrees with the determination and/or proposed accommodation after engaging in the interactive process, then the person may contact the Office of Equity & Compliance. Anyone who wishes to file a complaint involving prohibited discrimination and/or harassment based on disability (or any other protected class) may also contact the Office of Equity & Compliance. Students with concerns about potential discrimination may also contact the United States Department of Education, Office for Civil Rights, 915 Second Avenue, Room 3310, Seattle, WA 98174-1099; the United States Department of Housing and Urban Development by phone at (800)-877-0246, or on the web at http://www.hud.gov/complaints/ (and click on "Housing Discrimination"); or the United States Department of Justice, Disability Rights Section by email at ADA.complaint@usdoj.gov, or on the web  at http://www.ada.gov.

**5.  Confidentiality.**  All PSU employees have an obligation to maintain confidentiality regarding the disability-related information of students, staff, applicants for employment or admission, and members of the public. Accordingly, the DRC and HR may provide information to faculty and staff only when necessary to facilitate the interactive process or provide an accommodation.

## VI.    Links to Related Forms

1.  Students who wish to receive services must register with the DRC: www.drc.pdx.edu.

2.  Students with documented disabilities who are registered with the DRC need to fill out a service request form each term in order to receive services from the DRC. Students should go to DRC Online Services to fill out the service request form. Students who have questions about DRC Online, may go to tutorials and FAQs or call (503) 725-4150.

3.  University Housing forms:

    a.  To Request Approval for a Support Animal ›› University Housing Disability Services Request Form:

        http://www.pdx.edu/housing/sites/www.pdx.edu.housing/files/UniversityHousing
    DisabilityServicesRequestForm.pdf

    b.  To Request Disability Accommodations ›› Form:

        http://www.pdx.edu/sites/www.pdx.edu.housing/files/PSU%20University%20Ho
    using%20Disability%20Accommodation%20Request%20Form_0.pdf

    c.  To Request Housing Dietary Accommodations ›› Form:

        http://www.pdx.edu/housing/sites/www.pdx.edu.housing/files/PSU%20University
    %20Housing%20Dietary%20Accomodation%20Request%202012.pdf

## VII.  Links to Related Policies, Procedures, and Information

1.  PSU's policies regarding service animals and support animals may be found on the Office of Equity & Compliance (OEC) website: www.pdx.edu/diversity/office-of-equity-compliance.

2.  PSU's policy regarding prohibited discrimination and harassment may be found on the OEC website: www.pdx.edu/diversity/office-of-equity-compliance.

## VIII. Contacts

For students & prospective students:

    DRC, 116 Smith Memorial Student Union, 1825 SW Broadway
    Telephone: (503) 725-4150; TTY/Relay: (503) 725-6504; E-mail: drc@pdx.edu

For employees (faculty & staff), applicants, and members of the public:

    HR, Suite 518, Market Center Building, 1600 SW 4th Avenue
    Telephone: (503) 725-4926; TTY: (503) 725-6503; E-mail: askhrc@pdx.edu

For all other questions, concerns, and assistance in resolving a disagreement or to file a complaint:

OEC, Suite 830, Market Center Building, 1600 SW 4th Avenue
Telephone: (503) 725-5919; E-mail: diversity@pdx.edu

## IX.  History/Revision Dates

**Adoption Date:**

**Last Amended Date:**

**Next Review Date:**

Sources:                Americans with Disabilities Act; Fair Housing Act

## X.  Policy Adoption

Approved _____        Date _____


Approved _____        Date _____

# PSU Assistance Animal Policy

Portland State University (PSU) is committed to making reasonable modifications to its rules, policies, and practices as required by law to afford people with disabilities an equal opportunity to access its programs, services, and activities.

## GETTING HELP

### Students

| | |
|---|---|
| . . . bringing an assistance animal to campus. | Disability Resource Center<br>116 Smith Memorial Student Union<br>503-725-4150<br>http://www.drc.pdx.edu |
| . . . bringing an assistance animal to University Housing. | Disability Resource Center<br>116 Smith Memorial Student Union<br>503-725-4150<br>http://www.drc.pdx.edu |
| . . . reporting any animal *in University Housing* that is disruptive, out of control, or poses a threat to safety. | University Housing Office<br>503-725-4370 |
| . . . reporting any animal *elsewhere on campus* that is disruptive, out of control, or poses a threat to safety. | Campus Public Safety Office<br>503-725-4404 |
| . . . reporting a concern about disability discrimination or harassment. | Office of Equity and Compliance<br>503-725-5919<br>www.pdx.edu/diversity/office-of-equity-compliance |

### Faculty/Staff

| | |
|---|---|
| . . . bringing an assistance animal to campus. | Human Resources<br>503-725-4926 |
| . . . reporting any animal *in University Housing* that is disruptive, out of control, or poses a threat to safety. | University Housing Office<br>503-725-4404 |
| . . . reporting any animal *elsewhere on campus* that is disruptive, out of control, or poses a threat to safety. | Campus Public Safety Office<br>503-725-4404 |
| . . . reporting a concern about disability discrimination or harassment. | Office of Equity and Compliance<br>503-725-5919<br>http://www.pdx.edu/diversity/office-of-equity-compliance |

PETS

A "pet" is any animal kept for ordinary use and companionship. Assistance animals (service and support animals), as defined below, are not considered pets.

Pets are generally prohibited indoors on the PSU campus, except in University Housing, where fish and cats are sometimes permitted as pets. For more information on fish and cats in University Housing, please refer to the PSU Housing Handbook.

ASSISTANCE ANIMALS

This policy applies to assistance animals that may be used by individuals with disabilities at PSU. The term "assistance animal" is the overarching term that refers to both service animals as well as support animals as defined below.  Therefore, an assistance animal is an animal that either (1) works, provides assistance, or performs tasks for the benefit of a person with a disability; or (2) provides emotional or other type of support that alleviates one or more identified symptoms or effects of a person's disability.

   a. SERVICE ANIMALS

A "service animal" means any dog that is individually trained to do work or perform tasks for the benefit of a person with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. The work or tasks performed by a service animal must be directly related to the person's disability. The provision of emotional support, well-being, comfort, or companionship does not constitute work or tasks for the purpose of this definition. Species other than dogs or, in some cases, miniature horses, are not considered service animals for the purpose of this definition of a service animal.

Service animals will be permitted to accompany people with disabilities in all areas of PSU's facilities, including University Housing, where students, members of the public, and other participants in services, programs or activities are allowed to go. PSU does not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal. Individuals accompanied by a service animal on campus but who do not need any disability-related accommodations are not required to register with the DRC, nor is such individual required to submit a request for a reasonable accommodation to receive access of his or her service animal.

Additionally, PSU cannot ask about the nature or extent of a person's disability to determine whether a person's animal qualifies as a service animal. However, when it is not readily apparent that a dog is a service animal, PSU staff may make two inquiries to determine whether the dog qualifies as a service animal, which are:

> (1) Is the dog required because of a disability?
> (2) What work or task has the dog been trained to perform?

A service animal must be housebroken (i.e., trained so that it controls its waste elimination, absent illness or accident) and must be kept under control by a harness, leash, or other tether, unless the person is unable to hold those, or such use would

interfere with the service animal's performance of work or tasks. In such instances, the service animal must be kept under control by voice, signals, or other effective means.

PSU will assess requests for the use of miniature horses by people with disabilities on a case-by-case basis. Requests should be submitted to the Disability Resource Center and, consistent with applicable laws, PSU may make modifications in its policies to permit their use if they meet certain criteria and have been individually trained to do work or perform tasks for the benefit of people with disabilities.

### b.  SUPPORT ANIMALS

A "Support animal" is an animal that provides emotional or other support that ameliorates one or more identified symptoms or effects of a person's disability. Unlike service animals, support animals are not required to be trained to perform work or tasks, and they include species other than dogs and miniature horses.

Support animals are generally not allowed to accompany persons with disabilities in all public areas of PSU as a service animal is allowed to do, but a support animal may reside in University Housing, including accompanying such individual in all public or common use areas of University Housing, when it may be necessary to afford the person with a disability an equal opportunity to use and enjoy University Housing.  Before a support animal can move into University Housing with a person with a disability, a request must be submitted to PSU's Disability Resource Center and approval must be granted (preferably at least 30 days prior to move in). If the disability is not obvious, the DRC may require documentation from a licensed physician or mental health provider, including without limitation a qualified psychiatrist, social worker, or other mental health professional, to provide sufficient information for PSU to determine:

- that the individual qualifies as a person with a disability (i.e., has a physical or mental impairment that substantially limits one or more major life activities); and

- that the support animal may be necessary to afford the person with a disability an equal opportunity to use and enjoy University Housing (i.e. that the animal would provide emotional support or other assistance that would ameliorate one or more symptoms or effects of the disability).

While support animals are generally not allowed indoors on PSU's campus other than in University Housing, people with disabilities may request approval from the Disability Resource Center to have the support animal accompany them to other campus areas. Such requests will be considered on a case-by-case basis consistent with applicable laws.

**GUIDE AND HEARING TRAINEES:**  Oregon law allows animals that are being trained to be dog guides for the blind, hearing assistance dogs, or assistance animals for persons with physical impairments to access PSU facilities.

## RESPONSIBILITIES OF PEOPLE WITH DISABILITIES USING ASSISTANCE ANIMALS

PSU is not responsible for the care or supervision of assistance animals. People with disabilities are responsible for the cost, care, and supervision of assistance animals, including:

- compliance with any laws pertaining to animal licensing, vaccination, and owner identification;
- keeping the animal under control and taking effective action when it is out of control; and
- feeding and walking the animal, and disposing of its waste.

For specific campus areas designated by PSU for toileting service animals, contact the Disability Resource Center. Waste disposal via university plumbing is prohibited in university residences, but the Disability Resource Center or University Housing can provide guidance on where to appropriately dispose of animal waste.

PSU will not require any surcharges or fees for assistance animals. However, a person with a disability may be charged for damage caused by an assistance animal to the same extent that PSU would normally charge a person for the damage they cause.

People with disabilities who are accompanied by assistance animals must comply with the same university rules regarding noise, safety, disruption, and cleanliness as people without disabilities.

## EXCEPTIONS AND EXCLUSIONS

PSU may pose some restrictions on, and may even exclude, an assistance animal in certain instances. As noted above, support animals are generally not allowed indoors on PSU's campus other than in University Housing. Persons with disabilities may request approval from the Disability Resource Center to have the emotional support animal accompany them to other campus areas as a reasonable accommodation. Such requests will be considered on a case-by-case basis consistent with applicable laws. Any animal may be excluded from an area in which it was previously authorized to be only if:

- it is out of control and effective action is not taken to control it;
- it is not housebroken (or in the case of a support animal that deposits waste in a designated cage or litter box, the owner fails to clean such cage or box such that the cleanliness of the room is not maintained); or
- it poses a direct threat to the health or safety of others that cannot be mitigated by reasonable modifications of policies, practices, or procedures, or the provision of auxiliary aids or services.

In considering whether an assistance animal poses a direct threat to the health or safety of others, PSU will make an individualized assessment, based on reasonable judgment, current medical knowledge, or the best available objective evidence, to determine: (1) the

nature, duration, and severity of the risk; (2) the probability that the potential injury will actually occur; and (3) whether reasonable modifications of policies, practices, procedures, or the provision of auxiliary aids or services, will mitigate the risk. The University President shall name a designee who shall provide a written statement of explanation to any person with a disability if a determination is made that the presence of that person's assistance animal would fundamentally alter the nature of a program, service, or activity.

In the event that restriction or removal of an assistance animal is determined to be necessary, the person with a disability will still be given the opportunity to participate in the service, program, or activity without having the assistance animal present.

The above provisions on restrictions and exclusions is not intended to cover modifications to reasonable accomodations.  The reasonable accommodation process and modifications to reasonable accommodations are covered under PSU's policy on reasonable accommodations.

As noted above, support animals are generally not allowed indoors on PSU's campus other than in University Housing. Persons with disabilities may request approval from the Disability Resource Center to have the emotional support animal accompany them to other campus areas as a reasonable accommodation. Such requests will be considered on a case-by-case basis consistent with applicable laws.

## GUIDELINES FOR MEMBERS OF THE PSU COMMUNITY

To ensure equal access and nondiscrimination of people with disabilities, members of the PSU community must abide by the following practices:

- Allow assistance animals to accompany people with disabilities on campus;
- Do not ask for details about a person's disabilities;
- Do not pet an assistance animal, as it distracts the animal from its work;
- Do not feed an assistance animal;
- Do not deliberately startle, tease, or taunt an assistance animal; and
- Do not separate or attempt to separate a person from his/her assistance animal.

If you have a disability that may be affected by the presence of animals, please contact the Disability Resource Center. PSU is committed to ensuring that the needs of all people with disabilities are met and will determine how to resolve any conflicts or problems as expeditiously as possible.

## GRIEVANCE PROCEDURE

A student or employee who wishes to file a disability discrimination complaint should contact the Office of Equity and Compliance at 503-725-5919 or diversity@pdx.edu. The website for the Office of Equity and Compliance is at www.pdx.edu/office-of-equity-compliance.

Students with concerns about potential discrimination may also contact the United States Department of Education, Office for Civil Rights, 915 Second Avenue, Room 3310, Seattle, WA 98174-1099; the United States Department of Housing and Urban Development by phone at (800)-877-0246, or on the web at http://www.hud.gov/complaints/ (and click on "Housing Discrimination"); or the United States Department of Justice, Disability Rights Section by email at ADA.complaint@usdoj.gov, or on the web at http://www.ada.gov.

## LEGAL REFERENCES

Title II of the Americans with Disabilities Act
Section 504 of the Rehabilitation Act of 1973
Fair Housing Act
Oregon Revised Statutes
Oregon Administrative Rules

**APPENDIX E**

**FHEO-2013-01**



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-2000

OFFICE OF FAIR HOUSING
AND EQUAL OPPORTUNITY

---

**SPECIAL ATTENTION OF:**

HUD Regional and Field Office Directors
of Public and Indian Housing (PIH); Housing;
Community Planning and Development (CPD), Fair
Housing and Equal Opportunity; and Regional Counsel;
CPD, PIH and Housing Program Providers

FHEO Notice: **FHEO-2013-01**
Issued: April 25, 2013
Expires: Effective until
   Amended, Superseded, or
   Rescinded

---

Subject: Service Animals and Assistance Animals for People with Disabilities in Housing and HUD-Funded Programs

1. **Purpose:** This notice explains certain obligations of housing providers under the Fair Housing Act (FHAct), Section 504 of the Rehabilitation Act of 1973 (Section 504), and the Americans with Disabilities Act (ADA) with respect to animals that provide assistance to individuals with disabilities. The Department of Justice's (DOJ) amendments to its regulations[1] for Titles II and III of the ADA limit the definition of "service animal" under the ADA to include only dogs, and further define "service animal" to exclude emotional support animals. This definition, however, does not limit housing providers' obligations to make reasonable accommodations for assistance animals under the FHAct or Section 504. Persons with disabilities may request a reasonable accommodation for any assistance animal, including an emotional support animal, under both the FHAct and Section 504. In situations where the ADA and the FHAct/Section 504 apply simultaneously (*e.g.*, a public housing agency, sales or leasing offices, or housing associated with a university or other place of education), housing providers must meet their obligations under both the reasonable accommodation standard of the FHAct/Section 504 and the service animal provisions of the ADA.

2. **Applicability:** This notice applies to all housing providers covered by the FHAct, Section 504, and/or the ADA[2].

---

[1] Nondiscrimination on the Basis of Disability in State and Local Government Services, Final Rule, 75 Fed. Reg. 56164 (Sept. 15, 2010) (codified at 28 C.F.R. part 35); Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, Final Rule, 75 Fed. Reg. 56236 (Sept. 15, 2010) (codified at 28 C.F.R. part 36).

[2] Title II of the ADA applies to public entities, including public entities that provide housing, e.g., public housing agencies and state and local government provided housing, including housing at state universities and other places of education. In the housing context, Title III of the ADA applies to public accommodations, such as rental offices, shelters, some types of multifamily housing, assisted living facilities and housing at places of public education. Section 504 covers housing providers that receive federal financial assistance from the U.S. Department of Housing and Urban Development (HUD). The Fair Housing Act covers virtually all types of housing, including privately-owned housing and federally assisted housing, with a few limited exceptions.

3. **Organization:** Section I of this notice explains housing providers' obligations under the FHAct and Section 504 to provide reasonable accommodations to persons with disabilities[3] with assistance animals. Section II explains DOJ's revised definition of "service animal" under the ADA. Section III explains housing providers' obligations when multiple nondiscrimination laws apply.

### Section I:  Reasonable Accommodations for Assistance Animals under the FHAct and Section 504

The FHAct and the U.S. Department of Housing and Urban Development's (HUD) implementing regulations prohibit discrimination because of disability and apply regardless of the presence of Federal financial assistance. Section 504 and HUD's Section 504 regulations apply a similar prohibition on disability discrimination to all recipients of financial assistance from HUD. The reasonable accommodation provisions of both laws must be considered in situations where persons with disabilities use (or seek to use) assistance animals[4] in housing where the provider forbids residents from having pets or otherwise imposes restrictions or conditions relating to pets and other animals.

An assistance animal is not a pet. It is an animal that works, provides assistance, or performs tasks for the benefit of a person with a disability, or provides emotional support that alleviates one or more identified symptoms or effects of a person's disability. Assistance animals perform many disability-related functions, including but not limited to, guiding individuals who are blind or have low vision, alerting individuals who are deaf or hard of hearing to sounds, providing protection or rescue assistance, pulling a wheelchair, fetching items, alerting persons to impending seizures, or providing emotional support to persons with disabilities who have a disability-related need for such support. For purposes of reasonable accommodation requests, neither the FHAct nor Section 504 requires an assistance animal to be individually trained or certified.[5] While dogs are the most common type of assistance animal, other animals can also be assistance animals.

Housing providers are to evaluate a request for a reasonable accommodation to possess an assistance animal in a dwelling using the general principles applicable to all reasonable accommodation requests. After receiving such a request, the housing provider must consider the following:

---

[3] Reasonable accommodations under the FHAct and Section 504 apply to tenants and applicants with disabilities, family members with disabilities, and other persons with disabilities associated with tenants and applicants. 24 CFR §§ 100.202; 100.204; 24 C.F.R. §§ 8.11,  8.20, 8.21, 8.24, 8.33, and case law interpreting Section 504.
[4] Assistance animals are sometimes referred to as "service animals," "assistive animals," "support animals," or "therapy animals." To avoid confusion with the revised ADA "service animal" definition discussed in Section II of this notice, or any other standard, we use the term "assistance animal" to ensure that housing providers have a clear understanding of their obligations under the FHAct and Section 504.
[5] For a more detailed discussion on assistance animals and the issue of training, see the preamble to HUD's final rule, Pet Ownership for the Elderly and Persons With Disabilities, 73 Fed. Reg. 63834,63835 (October 27, 2008).

(1) Does the person seeking to use and live with the animal have a disability – *i.e.*, a physical or mental impairment that substantially limits one or more major life activities?

(2) Does the person making the request have a disability-related need for an assistance animal?  In other words, does the animal work, provide assistance, perform tasks or services for the benefit of a person with a disability, or provide emotional support that alleviates one or more of the identified symptoms or effects of a person's existing disability?

If the answer to question (1) **or** (2) is "no," then the FHAct and Section 504 do not require a modification to a provider's "no pets" policy, and the reasonable accommodation request may be denied.

Where the answers to questions (1) **and** (2) are "yes," the FHAct and Section 504 require the housing provider to modify or provide an exception to a "no pets" rule or policy to permit a person with a disability to live with and use an assistance animal(s) in all areas of the premises where persons are normally allowed to go, unless doing so would impose an undue financial and administrative burden or would fundamentally alter the nature of the housing provider's services. The request may also be denied if: (1) the specific assistance animal in question poses a direct threat to the health or safety of others that cannot be reduced or eliminated by another reasonable accommodation, or (2) the specific assistance animal in question would cause substantial physical damage to the property of others that cannot be reduced or eliminated by another reasonable accommodation. Breed, size, and weight limitations may not be applied to an assistance animal. A determination that an assistance animal poses a direct threat of harm to others or would cause substantial physical damage to the property of others must be based on an individualized assessment that relies on objective evidence about the specific animal's actual conduct – not on mere speculation or fear about the types of harm or damage an animal may cause and not on evidence about harm or damage that other animals have caused.  Conditions and restrictions that housing providers apply to pets may not be applied to assistance animals.  For example, while housing providers may require applicants or residents to pay a pet deposit, they may not require applicants and residents to pay a deposit for an assistance animal.[6]

A housing provider may not deny a reasonable accommodation request because he or she is uncertain whether or not the person seeking the accommodation has a disability or a disability-related need for an assistance animal.  Housing providers may ask individuals who have disabilities that are not readily apparent or known to the provider to submit reliable documentation of a disability and their disability-related need for an assistance animal.  If the disability is readily apparent or known but the disability-related need for the assistance animal is not, the housing provider may ask the individual to provide documentation of the disability-related need for an assistance animal.  For example, the housing provider may ask persons who are seeking a reasonable accommodation for an assistance animal that provides emotional

---

[6] A housing provider may require a tenant to cover the costs of repairs for damage the animal causes to the tenant's dwelling unit or the common areas, reasonable wear and tear excepted, if it is the provider's practice to assess tenants for any damage they cause to the premises. For more information on reasonable accommodations, see the Joint Statement of the Department of Housing and Urban Development and the Department of Justice, *Reasonable Accommodations Under the Fair Housing Act*, http://www.hud.gov/offices/fheo/library/huddojstatement.pdf.

support to provide documentation from a physician, psychiatrist, social worker, or other mental health professional that the animal provides emotional support that alleviates one or more of the identified symptoms or effects of an existing disability. Such documentation is sufficient if it establishes that an individual has a disability and that the animal in question will provide some type of disability-related assistance or emotional support.

However, a housing provider may not ask a tenant or applicant to provide documentation showing the disability or disability-related need for an assistance animal if the disability or disability-related need is readily apparent or already known to the provider. For example, persons who are blind or have low vision may not be asked to provide documentation of their disability or their disability-related need for a guide dog. A housing provider also may not ask an applicant or tenant to provide access to medical records or medical providers or provide detailed or extensive information or documentation of a person's physical or mental impairments. Like all reasonable accommodation requests, the determination of whether a person has a disability-related need for an assistance animal involves an individualized assessment. A request for a reasonable accommodation may not be unreasonably denied, or conditioned on payment of a fee or deposit or other terms and conditions applied to applicants or residents with pets, and a response may not be unreasonably delayed. Persons with disabilities who believe a request for a reasonable accommodation has been improperly denied may file a complaint with HUD.[7]

### Section II: The ADA Definition of "Service Animal"

In addition to their reasonable accommodation obligations under the FHAct and Section 504, housing providers may also have separate obligations under the ADA. DOJ's revised ADA regulations define "service animal" narrowly as any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. The revised regulations specify that "the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition."[8] Thus, trained dogs are the only species of animal that may qualify as service animals under the ADA (there is a separate provision regarding trained miniature horses[9]), and emotional support animals are expressly precluded from qualifying as service animals under the ADA.

The ADA definition of "service animal" applies to state and local government programs, services activities, and facilities and to public accommodations, such as leasing offices, social service center establishments, universities, and other places of education. Because the ADA requirements relating to service animals are different from the requirements relating to assistance animals under the FHAct and Section 504, an individual's use of a service animal in an ADA-covered facility must not be handled as a request for a reasonable accommodation under the FHAct or Section 504. Rather, in ADA-covered facilities, an animal need only meet the definition of "service animal" to be allowed into a covered facility.

---

[7] Ibid.
[8] 28 C.F.R. § 35.104; 28 C.F.R. § 36.104.
[9] 28 C.F.R. § 35.136(i); 28 C.F.R. § 36.302(c)(9).

4

To determine if an animal is a service animal, a covered entity shall not ask about the nature or extent of a person's disability, but may make two inquiries to determine whether an animal qualifies as a service animal. A covered entity may ask: (1) Is this a service animal that is required because of a disability? and (2) What work or tasks has the animal been trained to perform? A covered entity shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal. These are the only two inquiries that an ADA-covered entity may make even when an individual's disability and the work or tasks performed by the service animal are not readily apparent (*e.g.*, individual with a seizure disability using a seizure alert service animal, individual with a psychiatric disability using psychiatric service animal, individual with an autism-related disability using an autism service animal).

A covered entity may not make the two permissible inquiries set out above when it is readily apparent that the animal is trained to do work or perform tasks for an individual with a disability (*e.g.*, the dog is observed guiding an individual who is blind or has low vision, pulling a person's wheelchair, or providing assistance with stability or balance to an individual with an observable mobility disability). The animal may not be denied access to the ADA-covered facility unless: (1) the animal is out of control and its handler does not take effective action to control it; (2) the animal is not housebroken (i.e., trained so that, absent illness or accident, the animal controls its waste elimination); or (3) the animal poses a direct threat to the health or safety of others that cannot be eliminated or reduced to an acceptable level by a reasonable modification to other policies, practices and procedures.[10] A determination that a service animal poses a direct threat must be based on an individualized assessment of the specific service animal's actual conduct – not on fears, stereotypes, or generalizations. The service animal must be permitted to accompany the individual with a disability to all areas of the facility where members of the public are normally allowed to go.[11]

## Section III. Applying Multiple Laws

Certain entities will be subject to both the service animal requirements of the ADA and the reasonable accommodation provisions of the FHAct and/or Section 504. These entities include, but are not limited to, public housing agencies and some places of public accommodation, such as rental offices, shelters, residential homes, some types of multifamily housing, assisted living facilities, and housing at places of education. Covered entities must ensure compliance with all relevant civil rights laws. As noted above, compliance with the FHAct and Section 504 does not ensure compliance with the ADA. Similarly, compliance with the ADA's regulations does not ensure compliance with the FHAct or Section 504. The preambles to DOJ's 2010 Title II and Title III ADA regulations state that public entities or public accommodations that operate housing facilities "may not use the ADA definition [of "service animal"] as a justification for reducing their FHAct obligations."[12]

---

[10] 28 C.F.R § 35.136; 28 C.F.R. § 36.302(c).

[11] For more information on ADA requirements relating to service animals, visit DOJ's website at www.ada.gov.

[12] 75 Fed. Reg. at 56166, 56240 (Sept. 15, 2010).

The revised ADA regulations also do not change the reasonable accommodation analysis under the FHAct or Section 504. The preambles to the 2010 ADA regulations specifically note that under the FHAct, "an individual with a disability may have the right to have an animal other than a dog in his or her home if the animal qualifies as a 'reasonable accommodation' that is necessary to afford the individual equal opportunity to use and enjoy a dwelling, assuming that the use of the animal does not pose a direct threat."[13] In addition, the preambles state that emotional support animals that do not qualify as service animals under the ADA may "nevertheless qualify as permitted reasonable accommodations for persons with disabilities under the FHAct."[14] While the preambles expressly mention only the FHAct, the same analysis applies to Section 504.

In cases where all three statutes apply, to avoid possible ADA violations the housing provider should apply the ADA service animal test first. This is because the covered entity may ask only whether the animal is a service animal that is required because of a disability, and if so, what work or tasks the animal has been been trained to perform. If the animal meets the test for "service animal," the animal must be permitted to accompany the individual with a disability to all areas of the facility where persons are normally allowed to go, unless (1) the animal is out of control and its handler does not take effective action to control it; (2) the animal is not housebroken (i.e., trained so that, absent illness or accident, the animal controls its waste elimination); or (3) the animal poses a direct threat to the health or safety of others that cannot be eliminated or reduced to an acceptable level by a reasonable modification to other policies, practices and procedures.[15]

If the animal does not meet the ADA service animal test, then the housing provider must evaluate the request in accordance with the guidance provided in Section I of this notice.

It is the housing provider's responsibility to know the applicable laws and comply with each of them.


## Section IV. Conclusion

The definition of "service animal" contained in ADA regulations does not limit housing providers' obligations to grant reasonable accommodation requests for assistance animals in housing under either the FHAct or Section 504. Under these laws, rules, policies, or practices must be modified to permit the use of an assistance animal as a reasonable accommodation in housing when its use may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling and/or the common areas of a dwelling, or may be necessary to allow a qualified individual with a disability to participate in, or benefit from, any housing program or activity receiving financial assistance from HUD.

---

[13] 75 Fed. Reg. at 56194, 56268.
[14] 75 Fed. Reg. at 56166, 56240.
[15] 28 C.F.R § 35.136; 28 C.F.R. § 36.302(c).

Questions regarding this notice may be directed to the HUD Office of Fair Housing and Equal Opportunity, Office of the Deputy Assistant Secretary for Enforcement and Programs, telephone 202-619-8046.


John Trasviña, Assistant Secretary for
Fair Housing and Equal Opportunity

7